Submitted on briefs February 1, affirmed February 14, 1928.

## T. B. LAMBERT *v.* LAING & THOMPSON IRON WORKS.

(264 Pac. 362.)

**Master and Servant—Reasonable Skill Only Held Required, and Whether Mechanic, Employed Under Contract, Possessed Necessary Efficiency Held for Jury.**

1. Where mechanic entered into contract with iron works to produce machine for brushing blankets, and contract provided he was employed principally as inventor and deviser of certain machines upon which iron works hoped to obtain patent, *held* that contract was carried out in respect to ability to do work if mechanic brought reasonable degree of skill and efficiency, and whether or not he did this was question of fact for jury.

**Master and Servant—In Mechanic's Action on Contract of Employment, Burden of Proof Held on Employer to Show Mechanic was Incapable, After Fair Trial, of Performing Work.**

2. In action by mechanic under contract of employment for damages sustained by his discharge, *held* burden of proof was on employer to show mechanic was incapable, after fair trial, of performing work which he proposed to do.

**Master and Servant—Evidence Held Sufficient to Take Case to Jury in Mechanic's Action on Contract of Employment.**

3. In action on mechanic's contract of employment where, after discharge, mechanic sued employer for damages, evidence *held* sufficient to take case to jury.

**Master and Servant—In Contract for Special Work and Labor, It is Implied That Party Contracting shall be Mentally and Physically Capable of Performing Duties.**

4. In every contract for doing special work and labor, it is implied that the party contracting shall be mentally and physically capable of performing duties.

**Master and Servant—Requested Instruction Given Word for Word Except for Phrase "Would Justify Defendant in Discharging Defendant from Its Employ," Held not Misleading.**

5. Requested instruction in action by mechanic for breach of contract of employment, given word for word, except that by evident oversight court used phrase, "would justify defendant in discharging defendant from its employ," *held* not to have misled jury.

**Trial—Refusal of Requested Instruction Covered by Given Instruction Held not Error.**

6. Where given instruction contained in concise tabloid form whole substance of longer instruction requested by the defendant, *held* there was no error in refusing requested instruction.

---

Appeal and Error, 4 **C. J.**, p. 74, n. 14, p. 535, n. 8, p. 1032, n. 36. Master and Servant, 39 **C. J.**, p. 101, n. 60, 62, 66, p. 107, n. 12. Trial, 38 **Cyc.**, p. 1705, n. 82, p. 1779, n. 75.

From Multnomah: LOUIS P. HEWITT, Judge.

In Banc.

This is an action to recover damages occasioned by an alleged wrongful breach of a contract between T. B. Lambert plaintiff and defendant Laing & Thompson Iron Works.

---

2. Burden of proving negligence or incompetency of employee in justification of discharge, see note in 49 **A. L. R.** 488.

6. See 14 **R. C. L.** 751.

The defendant is a corporation engaged in the business of constructing and inventing various classes of machinery, and the plaintiff is an inventor, mechanic and machinist. On or about the ninth day of July the defendant entered into two written agreements with the plaintiff, which are as follows:

"This agreement made and entered into this —— day of July, A. D. 1924, by and between Thomas B. Lambert, hereinafter called the first party, and Laing & Thompson Iron Works, Inc., a corporation, hereinafter called the second party, Witnesseth

"Whereas the first party is an inventor, mechanic and machinist and is now the owner of certain United States Letters Patent for an automatic Weighing and segregating machine, which letters patent are No. 1374456, which the second party is desirous of purchasing, and

"Whereas the first party by agreement of even date herewith has been employed by the second party to aid and assist second party in developing and perfecting certain machines and ideas regarding machines which the said second party is now interested in and own, and

"Whereas the first party has certain other machines, devices and ideas in the process of development upon which no application for letters patent have been made or obtained, and which the second party is also desirous of purchasing from the first party,

"Now Therefore, in consideration of the promises and the conditions herein contained and of the payments to be made as hereinafter provided, the first party hereby agrees to sell to the second party his said patent rights for said weighing machine at and for the agreed purchase price of twenty-seven hundred and no-100 ($2700.00) dollars, which said sum the second party agrees to pay the first party at the following times and in the following manner, to-wit:

"Twenty per cent (20 per cent) of said purchase price upon the sale of the first five blanket brushing machines hereinafter referred to—twenty per cent (20 per cent) of said purchase price upon the sale of the first five textile fabric washing machines hereinafter referred to, thirty (30) per cent upon the sale of the second five (5) blanket brushing machines, and the balance upon the sale of the second five (5) textile fabric washing machines.

"Provided further, however, that in case the second party shall at any time sell, assign or dispose of in any manner said weighing machine patent, then and in that event the whole of said purchase price shall automatically and forthwith become due and payable to the first party, and

"Provided further that in the event that the second party shall not sell a sufficient number of either of said textile fabric washing machines or said blanket brushing machine, to pay the first party said sum of twenty-seven hundred and no-100 ($2700.00) dollars, then said purchase price shall be paid from the sale of whichever of said machines a sufficient number is sold to pay the first party said purchase price, and

"Provided further, that should the second party fail to sell enough of said machines to pay said total purchase price then and in that event the second party agrees to reconvey and transfer said letters patent on said weighing machine to the first party, first party to refund, however, the part of purchase price already paid him under this agreement.

"The first party agrees to furnish to the second party all sketches, ideas and information evolved by him in the course of his said employment as hereinbefore specified, and to aid the second party in every possible way in securing letters patent from the United States Government on a certain improved blanket brushing machine and textile fabric washing machine now being developed by the party of the second part, and also to furnish second party any and all

improvements to either or both of said machines as may be developed by him from time to time, as long as first party remains in the employ of the second party.

"It is mutually understood and agreed by the parties hereto that should either of said blanket brushing and washing machines be non-patentable or impractical after building, or should the first party for any reason fail or be incapable of performing his part of this contract, then and in that event the employment agreement hereinbefore referred to and this agreement shall automatically become null and void, in which event the second party agrees to forthwith reassign and convey by a proper instrument of conveyance said Letters Patent No. 1374456 to the first party, upon the first party's refunding to the second party all moneys paid him on the purchase price under this agreement.

"It is further understood and agreed between the parties hereto, that the first party shall give to the second party all sketches, ideas and information which the first party may evolve or develop on any other machine or device while in the employ of the second party. Provided, further, that if the second party shall obtain letters patent on any of said last mentioned machines or devices, then the second party agrees to pay the first party an additional compensation for the same, a sum equal to the selling price of one of each of said machines or devices, said compensation to be paid the first party at the rate of five (5) per cent of the selling price of each machine or device according as the same is sold and paid for in full. Provided, however, that the second party shall earnestly endeavor to sell and market said devices as promptly as is conveniently practicable and possible.

"It is further understood and agreed between the parties hereto that should the second party at any time permanently discontinue the manufacture of said blanket brushing machine and said textile fabric

washing machine or other machines developed and patented under this agreement, then and in that event second party hereby agrees to resell to the first party and the first party may at his option repurchase any or all of said patents from the second party by paying to the second party a sum of money equivalent to seventy-five per cent (75 per cent) of the selling price of the same, less a *pro rata* amount thereof based upon the expired term of years which the said patent or patents may have run.

"This agreement shall be binding and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto."

"This agreement made and entered into this 9th day of July, A. D. 1924, by and between Thomas B. Lambert, hereinafter called the first party and Laing & Thompson Iron Works, Inc., a corporation of Oregon, hereinafter called the second party, Witnesseth:

"Whereas the parties hereto have this day entered into an agreement in writing whereby the first party agrees to sell to the second party certain patent rights and to aid and assist the second party in the development of certain blanket brushing machines and washing machines, reference to which agreement is hereby made and by reference made a part of this agreement,

"Now therefore, in consideration of the premises and the promises herein contained and the payments as hereinafter provided to be made, the parties hereto agree as follows:

"Second party agrees to employ the first party in the second party's iron works in the city of Portland, Oregon, and agrees to pay the said first party for his services the sum of eighty cents (80) cents per hour for forty-four (44) hours per week, less the regular holidays as may be declared from time to time, which said rate is to continue in force and effect until the party of the second part shall have filed its application for letters patent in Washington, D. C., for a certain improved blanket brushing machine.

"As soon as said application for letters patent has been filed, then the second party agrees to pay the first party the flat salary of two hundred dollars ($200) and no-100 per month, for a period of one year from said last mentioned date, the first party to be subject, however, to shop supervision as applied to all workmen in said shop of the second party.

"Provided, however, and on condition that the party of the first part shall be physically and mentally capable of performance of his duties which it is understood shall be that of inventing and developing machines and devices with a view to patenting the same, and the general work of machinist and mechanic.

"It is further agreed that this agreement is to be renewed upon the same terms and conditions from year to year as long as the second party shall continue to manufacture and sell any of the machines mentioned in that certain agreement herein referred to for which applications have been made for letters patent.

"This agreement shall be binding and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto."

About the date of said agreements, plaintiff entered into the employment of defendant and on March 1, 1925, he was discharged therefrom, defendant paying him the salary mentioned in the complaint.

The complaint sets up the facts of plaintiff's employment, the two agreements, alleges the performance under them, and claims that the discharge of plaintiff was wrongful and without cause, and that he is damaged in the sum of $1,400. Defendant answered, admitting that it discharged plaintiff and alleges as the cause for such discharge that—

"I.

"After the execution of the agreements, exhibits 'A' and 'B' attached to the complaint, the applica-

tion for the patent of the blanket brushing machine mentioned in said contracts was denied and rejected by the United States Patent Office as non-patentable and that on or about the 28th day of February, 1925, and for a long time prior thereto plaintiff was physically and mentally incapable of performing his duties with the defendant as a machinist and a mechanic; that he was inaccurate in his work, lacking the power of concentration, took excessive time upon all jobs assigned to him, spoiled a great deal of work which was given to him in the course of his employment and was generally incompetent and wholly incapable of performing said duties.

"II.

"That by reason of the incompetency and incapacity of the plaintiff and by reason of the rejection of said patent claims the defendant on or about the 1st day of March, 1925, discharged the plaintiff under the terms of said contract.

"III.

"That heretofore, to-wit, on or about the 1st day of March, 1925, the defendant assigned and transferred unto the plaintiff by an instrument in writing its right, title and interest in and to Letters Patent Number 1374456 mentioned in exhibit 'A' attached to the complaint and delivered same unto the plaintiff and that plaintiff refused to accept said assignments and conveyance of said letters patent and returned the said assignment and conveyance unto the defendant."

As a reply to paragraph 1, above quoted, plaintiff admits that after the execution of the agreement an application for a patent of the blanket brushing machine was made by defendant, but denies that same was filed by said corporation, admits that said application was denied and rejected by the United States patent office, and denies each and every other allegation in said paragraph. Denies all of paragraph 2.

Admits the allegations of paragraph 3.  Alleges that "plaintiff herein invented, devised and made the sketches of two automatic adjustments to be used in connection with said blanket brushing machine, but that after receiving said drawings and ideas the defendant herein failed and neglected and refused to embody the same in its application for letters patent; that said application was made prematurely and without the approval of plaintiff and without giving him any opportunity to inspect said drawings and application, or to pass upon the sufficiency thereof, and without sufficient and proper drawings, and that said application was denied by the patent office for that reason; that after said application had been denied, the said defendant, after having additional drawing made, patterns devised and parts of said improvements made for said automatic adjustments, failed and refused to further prosecute said application and abandoned the same without giving plaintiff an opportunity to carry out, perfect his ideas, and without building either of said machines; * * that said blanket brushing machine, as devised by the plaintiff, is not now nor was it at the time of his discharge *non-patented.*"

It may be noted here that there is possibly an error as to the word "non-patented," and that it may have been intended to read "non-patentable," but this is mere speculation on the part of the writer of the opinion.

There was a jury trial and a verdict for the plaintiff for the sum of $565, for which judgment was rendered.  Defendant appeals.  A further statement will appear in the opinion.                    AFFIRMED.

For appellant there was a brief over the name of *Mr. W. B. Shively.*

For respondent there was a brief over the name of *Mr. J. M. Hickson.*

McBRIDE, J.—It would seem to be necessary to state succinctly what each party was to do under the terms of this contract; at least, so far as it respects the fact relating to the discharge of plaintiff. In the first place, plaintiff must show that he was an inventor, mechanic and machinist, and, as a matter of law, it should appear that he was possessed of reasonable skill and ability in the line of work in which he proposed to offer his services as an employee.

In the second place, he was bound to furnish to the second party the sketches, ideas and information evolved by him in the course of his employment, and to aid the second party in every possible way in securing letters patent from the United States government of a contemplated and improved blanket brushing machine and textile fabric washing machine then being developed by the party of the second part, and any and all improvements to either or both of said machines as might be developed by him from time to time as long as he remained in the employment of defendant.

Third, it was agreed by both parties that should either said blanket brushing or washing machine be nonpatentable or impractical *after building,* or should the plaintiff for any reason fail to be capable of performing his part of the contract, that the agreement should automatically become null and void, and the party of the second part was to reassign and convey by a proper instrument of conveyance letters patent

No. 1,374,456 to the first party, which it is admitted was offered to be done in the present case.

1. There is nothing in the bill of exceptions to indicate that plaintiff failed to use his best efforts to carry out his part of the contract. It is to be observed that nothing in the defendant's contract obliged plaintiff to produce a perfect machine. He was employed principally as an inventor and deviser of certain machines upon which the defendant hoped to obtain patents, and in that respect the contract was carried out if he brought to the work a reasonable degree of skill and efficiency. Whether he did this or not would be a question of fact for the jury. He was not bound to produce a patentable machine, but to use his best efforts in that direction. If, after building the proposed machine, it should prove to be nonpatentable, or if, after using his best efforts, the machine should prove to be nonpatentable or impractical, then his employment should cease automatically.

2. The bill of exceptions is not very complete as to his ability, but the burden of proof is on the defendant to show that he was incapable, after a fair trial, to perform the work which he proposed to do. Just exactly what he did, so far as the bill of exceptions shows, is described by Laing one of the officers of the defendant, which description is as follows:

"Lambert told me that he had a great idea on a proposition in connection with a blanket brushing machine and which involved the use of two brushes instead of one, which was already in existence and being operated by the Laundry Equipment Company and the main proposition was that by using two brushes he could brush the blanket by one operation on both sides; well I knew of this blanket brushing machine, of its first inception; they had tried to get a patent on a blanket brushing machine before I ever

saw Mr. Lambert; Mr. Fred Smith (?) of the State Laundry and I worked on that machine myself and I knew all about that; when he explained that two brush principle to me, I was interested, very much interested * * I gave him some rough sketches which are on the table and which Mr. Lambert and I went over very thoroughly * * I wrote out the mechanical papers and with these few sketches he gave me I drew up a patent drawing * * we were rushing it as fast as possible because Mr. Lambert was anxious to get this through and urging me to get it through, consequently I worked at home nights, and I drew a design of the machine at the time and before I sent that he was there and saw the drawing and he approved of it * * after the application was made I immediately started working up, what we call in mechanical terms a 'lay out'; that is drawing out the machine and finding out where he could get certain wheels, brushes and bearings and all those kind of things; no time was lost in starting on that 'lay out' because I was just as anxious as Mr. Lambert was to go ahead with it; we were anxious at that time to enlarge our business, the machine business and it was something I thought which was very good and I made the lay out; in the first lay out we had considerable trouble; we had no room for this thing— no room for the eccentric. * * We had the lay out and still decided on this eccentric adjustment—well, on making the first lay out, we found we could not do that, or put that on properly, and have a proper machine put on the market; it would look unmechanical; the arrangement on the frame would be so out of proportion and unmechanical, that it was entirely out of the question, that eccentric adjustment, and at Mr. Lambert's suggestion, the two of us together, we decided to abandon it * * he says 'according to that, Jim, we will go to work on this principle of the bell crank lever,' and that lay on the table for a month before there were any sketches given or made as to what the bell crank lever would be. * * We were

talking about that, and I told him his ideas were not practical. * * To draw up these two rolls (indicating) these are supposed to be rolls governed by a lever; there is a certain amount of friction coming from this roll; this is the double blanket; the blanket goes up; it is doubled and is immediately caught by the friction between these two rolls; as Mr. Lambert explained this morning, this roll winding up or operating by this bell crank lever system around this way the bottom roll being here and then around this way (indicating) that is a mechanical motion—now when the blanket gets up here (indicating) it comes in contact with this brush revolving at a speed of about 300 (?) revolutions * * And then down here (indicating) are another two rolls; well the distance between this center and this center (indicating) I think we decided on ten inches * * When the blanket comes here—gets down between these two rolls and comes to this part (indicating)—as soon as the end of the blanket leaves the contact of these two rolls, what becomes of that adjustment or mechanical motion—there is nothing there to hold it, isn't that right? * * The effect is that the blanket immediately falls down on top of the two rolls in a bunch, and the machine is not a practical mechanical job; that is what I saw when he explained this thing to me and wanted me to get a patent on it; I knew it wouldn't work and I told him my reasons why it wouldn't at that very time.''

He was then asked the following question by defendant's counsel:

''Now then referring to this drawing down here on the board, assuming that the blanket would fall down, as it is claimed (referring to drawing on blackboard) what effect would the falling down of that blanket have on the operation of this machine?''

The question was objected to and the objection sustained, the objection being that the witness did not show himself to be an expert.

It is not clear what the intent of this question was, although there is no question but that the witness showed enough expert knowledge to enable him to testify. There was no statement shown by the bill of exceptions as to what was expected to be proven by the witness, or as to what bearing it had upon the question in controversy. In fact, the machines were never built, and so there was no default on the part of plaintiff on that branch of the case which rendered the contract automatically void or capable of being terminated by defendant.

3. The other question, as to the fact of a patent having been applied for and denied, would have been perhaps sufficient to terminate the agreement, unless, as plaintiff claimed, some of the adjustments and improvements which he suggested were not included in defendant's application. Upon this there is no testimony in the bill of exceptions and we cannot know what the evidence showed on this point. So, upon the face of it, the plaintiff had a case sufficient to go to the jury.

We now come to the objection of certain instructions given by the court, and to other objections as to the refusal of the court to give requested instructions. The first objection is as to the following instruction:

"The burden of proof is upon the defendant to show by the preponderance of the evidence that plaintiff did not possess the skill and ability of a general mechanic."

The general rule is as stated in this instruction, but defendant contends that the following clause in the agreement places the burden of proof upon the plaintiff:

"Provided, however, and on condition that the party of the first part shall be physically and mentally capable of performance of his duties which it is understood shall be that of inventing and developing machines and devices with a view to patenting the same, and the general work of machinist and mechanic."

4. We think this clause adds nothing to what is implied in every contract for doing special work and labor, and that is that the party contracting to do such service shall be mentally and physically capable of performing his duties, and that the burden of proof still remained on the defendant, as in all other contracts, to show lack of capacity or skill to perform it properly.

The next objection is as to the failure of the court to give the following instruction requested by the defendant:

"Defendant in this case charges plaintiff with being incapable of performing his duties as a machinist and mechanic; it maintains that he was inaccurate in his work due to defective eyesight and lack of concentration; that he spoiled a great deal of work assigned to him; and that he was generally incompetent as a machinist and mechanic. These things would be a good defense and if true would justify defendant in discharging plaintiff from its employ under the terms of the contract. So that, if you believe from the evidence that defendant's claim as to plaintiff's incompetency are true, then your verdict here should be in favor of the defendant iron works."

5. The court gave this instruction word for word excepting that by an evident oversight, it used the phrase "would justify defendant in discharging *defendant* from its employ." This was evidently a mere slip of the tongue on the part of the court and cannot possibly have misled the jury.

The third objection is a refusal of the court to give the following requested instruction:

"If you believe that plaintiff is entitled to recover damages from the defendant you must take into consideration the matter of the plaintiff's time during the period of five months and eighteen days, the unexpired term of said contract. Now, the law fixes a duty upon plaintiff Lambert of reducing his damages as much as possible. The law will not permit him to rest comfortably at home during the five months and twenty days' period I have mentioned. The law requires Mr. Lambert to seek other employment during that period. He must use reasonable diligence to earn something at his trade or other occupation during this whole period of five months and eighteen days. So, I say to you that if you consider that Mr. Lambert is entitled to a verdict you must deduct from Eleven Hundred Twenty Dollars ($1120.00) the maximum amount I indicated above, not only what he actually earned, which he admits to have been Five Hundred Thirty-four Dollars ($534.00), but in addition thereto such amounts as you believe he was capable of earning by the exercise of reasonable diligence throughout the entire period of five months and eighteen days.

"In other words, the greatest possible judgment you can return in this case for the plaintiff, provided you believe he is entitled to anything from the defendant would be $1120.00, less $534.00 or $586.00, and from this latter amount you must deduct any further amounts you believe the plaintiff might reasonably have earned during this period of five months and eighteen days."

In lieu of this instruction, the court gave the following instruction:

"You will take into consideration what Mr. Lambert earned during that period, the rule being in a case of this kind where damages are sought for the breach of a contract of employment, that the injured

party, after the contract of employment has been broken by the employer, can recover the amount of the wages agreed upon for the unexpired term, less such amount that he was able to earn during that period of time, so his damages would be reduced by that amount; it is or was his duty to earn what he could during that time."

6. This instruction gives in concise and tabloid form the whole substance of the longer instruction asked by defendant, and where the instruction requested is given in substance by another instruction, there is no error.

The court also gave the following instruction:

"If you find for the plaintiff and that he is entitled to damages the greatest amount you could allow the plaintiff, taking into consideration the period of time for which he was not paid by the defendant, his earning power during that unexpired term would leave a balance not to exceed $565.00."

When the court told the jury that if plaintiff was entitled to damages, if at all, he was entitled to an amount of wages agreed upon less such amount as he was able to earn during the period of nonemployment by defendant, he practically told them that he was entitled to all that he was capable of earning, or all that it was his duty to earn at that time. In addition to that, the jury was instructed to take into consideration his earning power.

Taken as a whole, we think the trial was exceedingly fair and that the defendant suffered no substantial injury by any ruling of the court during the trial. The judgment is affirmed.          AFFIRMED.